UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
VITO AMALFITANO,

                Plaintiff,

       -against-

THE CITY OF NEW YORK,
SEAN CARROLL, DANIEL PALERMO,
JASON PULVER, ROBERT MUI,
CHRISTOPHER OGARRO, RAYMOND
FERMIN, TONY CHACKO, MARIUSZ
JASIURKOWSKI, SERGEANT ERIC DYM, and
UNIDENTIFIED POLICE OFFICERS
sued herein in their capacity as individuals.

                Defendants.
------------------------------------------------------------X

15 CIV. 09100

COMPLAINT
and DEMAND FOR
JURY TRIAL

## INTRODUCTORY STATEMENT

1. The Plaintiff, Vito Amalfitano ("Plaintiff" or "Amalfitano"), brings this action under 42 U.S.C. § 1983 seeking declaratory relief, compensatory and punitive damages, and attorney's fees under 42 U.S.C. § 1988 for the Defendants' violation of his rights afforded by the United States Constitution.

## JURISDICTION AND VENUE

2. The Court has jurisdiction over Plaintiff's claims under 42 U.S.C. § 1983, pursuant to 28 U.S.C. §§ 1331 and 1343(3).

3. Venue is proper in the Southern District for New York, pursuant to 28 U.S.C. § 1391(b), because the incidents complained of occurred within this district.

## PARTIES

4.     The Plaintiff, Vito Amalfitano, is a 24 year-old United States citizen who resides in Manhattan.

5.     Defendant, City of New York ("NYC" or "The City"), is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York. At all times relevant hereto, the City, acting through the New York City Police Department ("NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, and conduct of all NYPD personnel, including the Defendants referenced herein. In addition, at all relevant times, Defendant NYC was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and of the State of New York.

6.     On January 10, 2015, Defendant P.O. Sean Carroll, Shield #10931, was a duly sworn police officer of said department and was acting under the supervision of said department and according to his official duties.

7.     On January 10, 2015, P.O. Daniel Palermo, Shield #8367, was a duly sworn police officer of said department and was acting under the supervision of said department and according to his official duties.

8.     On January 10, 2015, Defendant P.O. Jason Pulver, Shield #27393, was a duly sworn police officer of said department and was acting under the supervision of said department and according to his official duties.

9.     On January 10, 2015, P.O. Robert Mui, Shield #24241, was a duly sworn police officer of said department and was acting under the supervision of said department and according to his official duties.

10. On January 10, 2015, P.O. Christopher Ogarro, Shield #4355, was a duly sworn police officer of said department and was acting under the supervision of said department and according to his official duties.

11. On January 10, 2015, P.O. Raymond Fermin, Shield #25506, was a duly sworn police officer of said department and was acting under the supervision of said department and according to his official duties.

12. On January 10, 2015, P.O. Tony Chacko, Shield #14353, was a duly sworn police officer of said department and was acting under the supervision of said department and according to his official duties.

13. On January 10, 2015, P.O. Mariusz Jasiurkowski, Shield #20843, was a duly sworn police officer of said department and was acting under the supervision of said department and according to his official duties.

14. On January 10, 2015, Sergeant Eric Dym, Shield #577, was a duly sworn police officer of said department and was acting under the supervision of said department and according to his official duties.

15. All Defendants, either personally or by and through their employees, were at all times material to this incident, acting under color of state law, to wit, under color of the statutes, ordinances, customs, policies and/or practices of the State of New York and/or the City of New York, and the employees of Defendant City of New York were also acting within the scope of and in furtherance of their employment.

16. At all times material to this complaint, the Defendants acted jointly and in concert with each other. Each Defendant had the opportunity and the duty to protect the Plaintiff from the

unlawful actions of the other Defendants but each Defendant failed and refused to perform such duty, thereby proximately causing the Plaintiff's injuries.

## FACTUAL ALLEGATIONS

17. On January 10, 2015, Vito Amalfitano was senselessly and violently attacked by a group of plainclothes officers from Police Service Area 4 ("PSA 4"), who then falsely arrested him in an ill-fated attempt to justify their actions. Within six weeks, all charges brought against him were dismissed and sealed. Although Mr. Amalfitano continues to have no criminal record as a result of this case, the pain stemming from his injuries, including numerous facial fractures, as well as the humiliation and trauma he experienced as a result these officers' brutal actions continues to affect him today.

18. At approximately 8:00 P.M. on January 10, 2015, Mr. Amalfitano was standing outside of 290 E. 4th Street, New York, NY looking at his phone. He was waiting for his two year-old son's mother, who lives at that address, to come downstairs.

19. Plaintiff was not engaged in any activity that could even be remotely perceived as criminal in nature.

20. Suddenly, what looked like a construction van pulled up and four or five men in civilian work clothes jumped out and ran at Mr. Amalfitano. Unbeknownst to Mr. Amalfitano, these men were actually some of the Defendant police officers. At no time did they identify themselves and Mr. Amalfitano did not recognize them.

21. The two men leading the charge were both Caucasian. One was heavyset, around five feet eight inches with blond or red hair. The other man was tall and wore a winter hat.

22. Behind them were two other men. One was a shorter African-American man with short hair and a medium build; the other was a shorter Asian man with a stocky build.

4

23. 290 E. 4th Street is part of Bracetti Plaza, a New York City Housing Authority ("NYCHA") housing development. In November of 2014, two shootings took place in the area.

24. There was also a shooting on December 19, 2014 at another NYCHA development, the Lillian Wald Houses, just three blocks away from 290 E. 4th Street.

25. In response, PSA 4 set up a "SkyWatch" patrol tower on East Third Street and Avenue C across the street from Bracetti Plaza. The NYPD also placed a light tower at the intersection of East 4th Street and Avenue C—the approximate location of 290 E. 4th Street.

26. On January 10, 2015, Mr. Amalfitano was well aware of the recent shootings in his neighborhood.

27. It was in this climate of unease and recent violence in his neighborhood that Mr. Amalfitano believed he was under attack by a group of strangers on January 10, 2015.

28. Fearing for his safety, Mr. Amalfitano ran away from the men and into 290 E. 4th Street.

29. The men chased Mr. Amalfitano up the stairs. They caught up to him outside his son's mother's apartment on the second floor and shoved the Plaintiff through the doorway, thereby entering the premises without permission or authority.

30. Once inside, the men punched Mr. Amalfitano in the face and about his body without justification. At least one of the punches landed squarely on his right eye. One of the men placed Mr. Amalfitano in a headlock, holding him upright as he tried to get his body on the ground.

31. At some point during the beating, he was placed in handcuffs, which was the moment he realized that these men were in fact police officers.

32. At least eight police officers were present in the apartment during this beating.

33.     At no time on January 10, 2015 did Mr. Amalfitano have on his person any illegal substance or contraband, nor was he engaged in criminal or illegal activity.

34.     After he was handcuffed and placed under arrest despite the absence of any criminal wrongdoing or probable cause, the Defendant officers continued to beat him to the point where he was bleeding profusely. Despite his inability to move due to being handcuffed and injured, one Defendant officer sprayed him with pepper spray.

35.     To add insult to injury, this attack on his person at the hands of these officers happened in the presence of Mr. Amalfitano's two year-old son, his son's mother, and members of his son's mother's family.

36.     Mr. Amalfitano was then taken to PSA 4 where he continued to bleed from his face. He was in severe pain. Despite the loss of blood and increased swelling around his eye, one Defendant urged him not to seek medical attention.

37.     Eventually, after Mr. Amalfitano made several requests for an ambulance, one came and he was taken to Bellevue Hospital where he was found to have four fractures of the facial bones near his eye, a dislocated shoulder, numerous cuts and contusions, and other injuries.

38.     On January 11, 2015 at 1:25 am, Defendant Sean Carroll signed a criminal court complaint alleging that that he saw Defendant Mui recover a bag containing two smaller bags of marijuana from the ground inside a closet that Defendant Carroll saw Mr. Amalfitano "run past immediately before." Defendant Carroll also alleged that when he attempted to arrest Mr. Amalfitano, he twisted away, refused to put his hands behind his back, threw his arms around, and pushed and shoved, making it difficult to handcuff him.

39.     These false allegations by Defendant Carroll set in motion a criminal prosecution of Mr. Amalfitano. At no time on January 10, 2015 did Mr. Amalfitano possess marijuana or resist a

6

lawful arrest. Nor had he run past any closet before his attack at the hands of Defendants, as the reason he was inside the apartment was that Defendants had shoved him inside and immediately tackled him to the floor.

40.  On the evening of January 11th, 2015, after over 24 hours in police custody, he was arraigned on misdemeanor charges of resisting arrest and criminal possession of marijuana. Mr. Amalfitano appeared on the record with a swollen face and his arm in a sling; his injuries were plainly visible to all in the courtroom, including the assistant district attorney handling the arraignment.

41.  The Honorable Judge Steven M. Statsinger released him on his own recognizance and Mr. Amalfitano promptly returned to Bellevue Hospital for more medical treatment.

42.  The Manhattan District Attorney's Office continued to prosecute Mr. Amalfitano after his arraignment despite the specious allegations in the complaint and their knowledge of his injuries at his arraignment.

43.  On February 18, 2015, all charges against Mr. Amalfitano were dismissed and sealed by the Honorable Judge Robert Mandelbaum in Part A of Manhattan Criminal Court.

44.  As a result of the actions of Defendants, Mr. Amalfitano suffered severe pain, loss of liberty, mental anguish, fright, apprehension, and humiliation, and deprivation of his constitutional rights, among other things.

**FIRST CAUSE OF ACTION: UNREASONABLE FORCE UNDER 42 U.S.C. § 1983**

45.  Plaintiff repeats and re-alleges each and every allegation contained in paragraphs one through 44 of this Complaint with the same force and effect as if fully set forth herein.

46. The conduct and actions of Defendants acting in concert and under color of law in authorizing, directing and/or causing injuries to Mr. Amalfitano by beating him and spraying him with pepper spray were excessive, unreasonable and unwarranted.

47. Defendants' actions were intentional, willful, malicious, egregious, negligent, unconscionable and unprovoked. These acts were done without justification or reason and were committed in violation of Mr. Amalfitano's rights as guaranteed under 42 U.S.C. § 1983, and the Fourth and Fourteenth Amendments to the United States Constitution.

48. As a result of Defendants' excessive force and brutality, Mr. Amalfitano suffered broken bones in his face, a dislocated shoulder, substantial pain and bruising around his body as well as emotional pain and trauma.

49. Plaintiff seeks compensatory damages from all Defendants, as well as punitive damages from all the individual Defendants.

### SECOND CAUSE OF ACTION: FALSE ARREST UNDER 42 U.S.C. § 1983

50. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs one through 44 of this Complaint with the same force and effect as if set forth herein.

51. As a direct and proximate result of Defendants' actions as set forth herein, Plaintiff was deprived of rights, privileges and immunities secured to him under the constitution and the laws of the United States, including, but not limited to, his rights under the First, Fourth and Fourteenth Amendments and 42 U.S.C. § 1983 to be secure in his person, to be free from unreasonable searches and seizures, to his due process right to be free from false arrest and false imprisonment and punishment without due process.

52. The Defendants acted with malice or with reckless disregard for whether Plaintiff's rights would be violated by their actions.

53. As a result of the aforesaid violation of Plaintiff's rights, he sustained grievous personal injuries to mind and body, sustained great pain and suffering, was deprived of his liberty and made ill, and was subjected to ridicule, scorn and humiliation by those observing and/or knowing of his arrest, assault, battery, detention and prosecution.

54. Plaintiff seeks compensatory damages from all Defendants, as well as punitive damages from all the individual Defendants.

**THIRD CAUSE OF ACTION: MALICIOUS PROSECUTION UNDER 42 U.S.C. § 1983**

55. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs one through 44 of this Complaint with the same force and effect as if set forth herein.

56. Defendants were directly and actively involved in the initiation and continuation of criminal proceedings against Plaintiff.

57. Defendants lacked probable cause to initiate and continue criminal proceedings against Plaintiff.

58. The criminal proceedings against Plaintiff were terminated in his favor.

59. As a result of Defendants' lack of probable cause to arrest Mr. Amalfitano and inability to state a legally sufficient claim against him, these criminal proceedings were terminated in favor of Plaintiff on February 18, 2015.

60. As a result of the aforesaid violation of Plaintiff's rights, he sustained grievous personal injuries to mind and body, sustained great pain and suffering, was deprived of his liberty and made ill, and was subjected to ridicule, scorn and humiliation by those observing and/or knowing of his arrest, assault, battery , detention and prosecution.

61.     Plaintiff seeks compensatory damages from all Defendants, as well as punitive damages from all the individual Defendants.

### FOURTH CAUSE OF ACTION: *MONELL*

62.     Plaintiff repeats and realleges each and every allegation contained in paragraphs one through 44 of this Complaint with the same force and effect as if set forth herein.

63.     The aforesaid occurrence was due to the policy, custom and practice of Defendant City of New York and/or its supervisors and policymakers, and their willful indifference to the training, supervision, disciplining, and retention of the individual Defendants, which caused a blatant violation of Plaintiff's civil rights.

64.     Additionally, the City of New York knew or should have known more specifically of Defendant Eric Dym's propensity to engage in just the kind of misconduct alleged by Plaintiff.

65.     Eric Dym was present during this false arrest and beating of Mr. Amalfitano, and, based on information and belief, the highest ranking officer present and the only officer with supervisory authority. Nevertheless, he took no action to prevent the constitutional violations set forth herein; in fact, he actively participated in them.

66.     Upon information and belief, prior to January 10, 2015, the City of New York was aware of several claims of constitutional violations involving Sergeant Eric Dym, as documented in the following civil rights actions filed against him—all of which pertain to conduct that predated January 10, 2015:

    a. Gomez v. New York City et al., 12-cv-7989 (JLC) (S.D.N.Y) (alleging that Dym used excessive force by punching a 14 year-old boy on the side of the head, and then used excessive force in the confines of PSA 4 by slamming to the ground an adult who was looking for the boy);

b. Terry v. The City of New York et al., 11-cv-09684 (JMF) (alleging that Dym acted in concert with other officers in assaulting and, on two separate occasions, falsely arresting plaintiff);

c. Holloman v. The City of New York et al., 11-cv-01624 (AKH) (in false arrest and excessive force case, alleging that Dym beat plaintiff with his bare hands and with handcuffs);

d. Johnson v. City of New York et al., 15-cv-04149 (AJN) (in false arrest and excessive force case, alleging that Dym punched and kicked plaintiff, and then sprayed him with mace while other officers had him pinned to the floor).

67. Despite knowledge of such incidents of misconduct and violence by Eric Dym, the City of New York failed to take action. Moreover, based on information and belief, Sergeant Dym was promoted following this incident to lieutenant despite the numerous complaints of misconduct made against him.

68. Defendant Mui, the officer who Defendant Carroll claims recovered the marijuana inside the residence, has also been sued for false arrest and excessive force. In Johnson v. City of New York et al., 15-cv-04149 (AJN), Defendant Mui was alleged to have participated and/or failed to intervene in the false arrest and beating of Alonge Johnson on December 5, 2013.

69. In Terry v. The City of New York et al., 11-cv-09684 (JMF), Defendant Jasiurkowski was also accused of participating in two false arrests of James E. Terry, and participating in beating him on one occasion.

70. Despite knowledge of such incidents of misconduct and violence by Defendants Mui and Jasiurkowski, the City of New York failed to take any action to correct their behavior.

71. In fact, it was the policy of the City of New York to inadequately train, supervise and discipline its police officers, which in turn failed to discourage the type of constitutional

violations inflicted upon Mr. Amalfitano. As a result, the defendant police officers in this case believed that their actions would not be monitored by their superiors and that their misconduct could go on without repercussions.

72. These wrongful and inadequate policies and practices demonstrate a deliberate indifference on the part of the City of New York to protect the constitutional rights of the citizens of this city, and were the direct and proximate cause of the violations of Mr. Amalfitano's rights.

73. As a result of the aforesaid violation of his civil rights, the Plaintiff sustained serious personal injuries to mind and body, and sustained great pain and emotional suffering.

74. Because of the foregoing, the Plaintiff seeks compensatory damages from all Defendants and an equal amount as punitive damages from all the individual Defendants.

JURY DEMAND

75. The Plaintiff respectfully demands that this proceeding be tried by a jury.

WHEREFORE, Plaintiff prays for the following relief:

1) For a declaratory judgment under 28 U.S.C. Sec. 2201 declaring that the Defendants, separately and in concert, violated the Plaintiff's constitutional rights; and

2) For compensatory damages against all Defendants; and

3) For punitive damages against the individual Defendants; and

4) For attorney's fees and costs pursuant to 42 U.S.C. § 1988; and

5) For such other relief as is just and proper.

DATED:     New York, New York
           November 19, 2015

Respectfully submitted,

BERANBAUM MENKEN LLP

_____
By: Jason Rozger
Scott Simpson
80 Pine Street, 33rd Floor
New York, New York 10005
(212) 509-1616
(212) 509-8088
jrozger@nyemployeelaw.com